UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CONTRA PIRACY

    Plaintiff,

v.

DOES 1-2919

    Defendants.

No. C-13-01133 EDL

ORDER OF DISMISSAL

This is a BitTorrent copyright infringement case. Due to allegations in the Complaint that Plaintiff held only "enforcement rights" in the work at issue, the Court ordered Plaintiff to show cause why this action should not be dismissed for lack of subject matter jurisdiction. Plaintiff responded to the Order to Show Cause, and the Court held oral argument. For the reasons set forth below, the Court finds that Plaintiff holds only a "bare right to sue" for copyright infringement, which is insufficient to confer standing. Consequently, the Court dismisses this case with prejudice for lack of subject matter jurisdiction.

**I.    Background**

Plaintiff Contra Piracy is a Swiss association founded in 2009 to protect the intellectual property rights of its members. (Contra Piracy Agreement at 7[1], Dkt. 11; Supp. Schneider Decl. ¶ 4, Dkt. 12.) To take advantage of Plaintiff's services, one must become a member of Plaintiff and join its "Intellectual Property Rights Management Scheme" ("RMS"). Under the RMS, Plaintiff asserts the legal rights of its members. (Contra Piracy Agreement at 13.) Members facilitate Plaintiff's activities by assigning it intellectual property rights and a "a comprehensive and revocable power of authorization in order to perform its tasks." (Id. at 14.) When Plaintiff is enforcing a member's

---

[1] Because the document Plaintiff provided the Court appears to be a combination of several related documents, each with separate pagination, the Court will refer to the page number generated by the Court's ECF system, which is located at the top of each page.

1  rights, the member is prohibited from asserting those rights. (Id. at 13.) Plaintiff splits the "income"
2  generated by enforcing a member's rights with the member. (Id. at 14.) This "income" is defined as
3  "the sum paid in favor of the respective member from an out-of-court settlement with the alleged
4  infringer." (Id.) The rights and responsibilities of Plaintiff and its members are set forth in a
5  document with the heading "Statutes," which the Court refers to as the "Contra Piracy Agreement."

6      Hannibal Pictures Inc. d/b/a Hannibal Pictures is the owner of the copyright in the film "All
7  Things Fall Apart" ("the work"). (Schneider Decl. ¶ 7, Dkt. 9-1.) On November 13, 2012,
8  Hannibal Pictures applied for membership in Plaintiff and to join the RMS. (Contra Piracy
9  Agreement at 1-5.) Hannibal Pictures and Plaintiff also entered into a "Limited, Exclusive
10 Assignment of Copyright Agreement" ("Assignment Agreement") regarding, among other things, he
11 work at issue in this case.[2] (Assignment Agreement, Dkt. 9, Ex. A.) Hannibal Pictures assigned
12 Plaintiff "the exclusive rights to copy and distribute the copyrighted Work or Works listed in
13 Appendix 1 in the listed territories over internet-based peer-to-per BitTorrent networks." (Id.)
14 Hannibal Pictures further assigned Plaintiff the right to enforce the copyright in the works that were
15 assigned. (Id.) The purpose of these assignments was to allow Plaintiff to enforce Hannibal
16 Pictures' intellectual property rights. (Assignment Agreement ("[T]he parties agree that an
17 assignment of exclusive rights in copyrights held by Assignor to Contra Piracy is necessary for
18 Contra Piracy to provide intellectual property rights management services to Assignor . . . .").)

19     Three days after the assignment agreement was executed, Plaintiff began identifying the
20 Internet Protocol addresses of those using the peer-to-peer BitTorrent protocol to download copies
21 of the work. (Compl. ¶¶ 7-8, Dkt. 1.) Plaintiff identified 2,919 IP addresses in the United States
22 associated with unauthorized distribution and copying of the work. (Compl. ¶¶ 7-8.) On March 3,
23 2013, Plaintiff brought a defendant class action against 2,919 Doe Defendants for copyright
24 infringement.

25     Soon after filing the Complaint, Plaintiff filed an ex parte application for leave to take
26 limited discovery to uncover Defendants' identities. (Dkt. 6.) Plaintiff sought an order permitting it
27 to subpoena sixty-one Internet Service Providers ("ISPs") to obtain the names, addresses, telephone
28

---

[2] "All things Fall Apart," also known as "Things Fall Apart," was listed in an appendix to the Assignment Agreement.

2

numbers, and email addresses associated with the 2,919 IP addresses it identified. (Dkt. 6 at 12.) The Court denied Plaintiff's ex parte motion for early discovery due to serious questions regarding Plaintiff's standing to sue for copyright infringement, and the Court ordered Plaintiff to show cause why the case should not be dismissed. (Dkt. 8.)

Plaintiff responded to the order to show cause and provided the Court with copies of the Contra Piracy Agreement, the Assignment Agreement, and several declarations. The Court held a hearing on the Order to Show Cause on June 27, 2013. Due the procedural posture of the case, the hearing was ex parte and Plaintiff appeared through its counsel, Boden Davidson.

**II. Discussion**

    1.    <u>Legal Standard</u>

"Federal courts are required sua sponte to examine jurisdictional issues such as standing." <u>Bernhardt v. Cnty of Los Angeles</u>, 279 F.3d 862, (9th Cir. 2002); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.") As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing the elements of standing. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992) (addressing constitutional standing).

"To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright.'" <u>Silvers v. Sony Pictures Entertainment, Inc.</u>, 402 F.3d 881, 884 (9th Cir. 2005) (citing 17 U.S.C. § 501(b)); <u>Righthaven LLC v. Hoehn</u>, 716 F.3d 1166, 1169 (9th Cir. 2013). These exclusive rights are defined in 17 U.S.C. § 106 and include, for example, the rights to reproduce and distribute a copyrighted work. The owner of an exclusive right only has standing to sue for the infringement of the particular right he owns. 17 U.S.C. § 501(b). The right to sue for copyright infringement itself is not an exclusive right under § 106, and thus the assignment of such a right without the transfer of an associated exclusive right does not confer standing to sue. <u>Silvers</u>, 402 F.3d at 884, 890.

In the Ninth Circuit, "[w]hen determining whether a contract has transferred exclusive rights," courts "look not just at the labels parties use but also at the substance and effect of the contract." <u>Righthaven</u>, 716 F.3d at 1169-70. If the "substance and effect of the contract" demonstrate that a plaintiff has only "the bare right to sue," the plaintiff lacks standing. <u>Id</u>. at 1170.

3

1  In making this determination, courts look at what was actually assigned, the purpose of the
2  agreement, and the extent to which the right to exploit is limited. Id. at 1168-70; Minden Pictures,
3  Inc. v. Pearson Education, Inc., Case No. 11-5385 WHA, 2013 U.S. Dist. LEXIS 31047, at *15-*16
4  (N.D. Cal. Mar. 5, 2013) (finding no standing where assignment was a "disguised assignment of a
5  cause of action," the sole purpose of which was to allow plaintiff to "bring suit and divvy up any
6  returns"); Nafal v. Carter, 540 F. Supp. 2d 1128, 1133, 1143-44.(C.D. Cal. 2007). Courts also
7  consider whether the assignment lacks terms one would expect to see if the agreement actually
8  assigned exclusive rights. Minden, 2013 U.S. Dist. LEXIS 31047 at *16 ("Beyond the express
9  terms, the parties' intent is also evident from what is missing from the agreement: a term specifying
10 the duration of the license.").

2.  Analysis

Plaintiff argues that it has standing because it holds the rights to make copies and distribute the copyrighted work over the peer-to-peer BitTorrent protocol. According to Plaintiff, these rights are exclusive rights under 17 U.S.C. § 106. Plaintiff asserts that it is not unusual for assignments to be limited to a particular geographical area or medium, and that the BitTorrent protocol is a primary medium through which copyrighted works may be distributed over the Internet.

Plaintiff employs a creative variation on the enforcement model that failed for lack of standing in prior cases such as Righthaven, 716 F.3d at 1172, as well as substituting a putative defendant class for the unsuccessful attempts to use joinder in prior BitTorrent cases such as First Time Videos LLC v. Does 1-294, Case No. 11-02916 EDL, 2011 U.S. Dist. LEXIS 104490 (N.D. Cal. Sept. 15, 2011). However, beneath the new labels lies the same thinly "disguised assignment of a cause of action" for the sole purpose of "bring[ing] suit and divvy[ing] up" proceeds from settlements. Minden, 2013 U.S. Dist. LEXIS 31047 at *14-*15, *16.

Plaintiff was assigned: (1) the right to enforce the copyright in the work; and (2) the right, which appears to be revocable ("revocable power of authorization"), to copy and distribute the work over peer-to-peer BitTorrent networks "in order to perform its tasks," which tasks are exclusively enforcing the copyright to obtain income from out-of-court settlements to split with the copyright holder. The first, of course, does not confer standing. Silvers, 402 F.3d at 884, 890. The second are exclusive rights in name only. In response to the Court's further order requiring Plaintiff to file

an additional declaration addressing the extent of commercial use of the P2P/BitTorrent protocol for distribution of copyrighted works, filed June 21, 2013, Plaintiff's employee acknowledged that there is little to none and did not claim that Plaintiff engaged in any such commercial use. (Supp. Schneider Decl. ¶ 6 (stating that "it is exceedingly difficult to create a legitimate P2P/BitTorrent market in light of the overwhelming infringements utilizing the protocol" and that "the extent of legitimate commercial distribution via P2P/BitTorrent in a market sense is severely limited"). Plaintiff's counsel further confirmed that this was the case at the hearing. Moreover, these purported rights appear to be revocable, as the Contra Piracy Agreement refers to a "revocable" power of authorization, which Plaintiff's counsel could not explain at the hearing. Accordingly, the "exclusive rights" assigned to Plaintiff are illusory.

Additionally, the purpose of the assignment was to give Plaintiff the ability to sue for copyright infringement and obtain out-of-court settlements as revenue to split with copyright holder members. The Assignment Agreement confirms that its purpose is to allow Plaintiff to provide "intellectual property rights management services." The Contra Piracy Agreement provides that these services consist of Plaintiff asserting the legal rights and claims of members. Plaintiff acknowledges that it is in the business of providing counter-piracy services to copyright owners by accepting assignments of copyrights and suing to enforce these copyrights. (Compl. ¶ 6.)

As in <u>Minden</u>, the Assignment Agreement and Contra Piracy Agreement are silent as to a number of things one would expect to see in an assignment of exclusive rights. The agreements say nothing about the duration of the assignment. Plaintiff's counsel stated that he assumes that Hannibal Pictures could revoke the assignment if Hannibal Pictures withdrew is membership in Plaintiff. The agreements say nothing about whether the assignment could be sublicensed. Plaintiff's counsel stated that he assumes Plaintiff could sublicense its rights. The agreements say nothing about royalties if Plaintiff were to exploit its rights to distribute or copy the work over a BitTorrent network. Plaintiff stated that he assumes any royalties would be split. The only split discussed in the Contra Piracy Agreement, however, is how the Plaintiff and its members will divide proceeds of settlements with alleged infringers. (Contra Piracy Agreement at 14.) That the only monetary division discussed in the agreements involves settlement proceeds is further evidence that the purpose of the assignment was to give Plaintiff the ability to sue. Finally, the agreements are

5

noticeably devoid of any provision for the disposition of any revenues that could be obtained from verdicts or court orders of fees or costs upon success in court, suggesting a business model of using the information obtained from early discovery into the identities of individual defendants to negotiate quick settlements under the threat of embarrassing and expensive litigation without actually litigating claims on their merits.

### III. Conclusion

The stated purpose of the assignment, the lack of indicia that it was a legitimate assignment of exclusive rights, and the admittedly negligible value, if any, of the rights assigned (other than to obtain revenue through out-of-court settlements) convince the Court that in reality Plaintiff only holds the bare right to sue for copyright infringement. Thus, Plaintiff lacks standing under 29 U.S.C. § 501(b). The case is dismissed with prejudice.

Dated: July 23, 2013

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge